11. Copy of Mr. Reno's New Jersey driver license, Medicare insurance card, and Oxford Medicare Advantage card.
12. SallieMae Loan Discharge Application dated March 10, 2005.

In addition, I have relied on publicly available documents that are cited below and/or in my calculations attached.

### III. Calculation of Damages:

✗   ⌈ I have calculated the present value of lost income and retirement benefits to Mr. Reno to be **$1.011 million.**⌉ The following are relevant to this conclusion:

1. I have assumed that Mr. Reno is unable to work in the area of security (police officer) for the US government. Since I am neither a medical expert nor a vocational expert, I cannot render an expert opinion on this assumption. However, I do note that in the materials provided to me, the US government (CIA) did offer Mr. Reno a position as a police officer. (See letter from Gonzalez cited above.) Further, Mr. Reno was found unfit for this type of work. (See letters from Spottswood and Dickison cited above.) Further, Dr. Juan Orlando Falcon signed the SallieMae document (cited above) that found Mr. Reno "unable to earn money in any capacity" effective June 1, 2004. This date is the date at which I start the loss calculation.
2. Absent Mr. Reno's inability to work, I have assumed that he could have worked to a statistically normal worklife expectancy of age 62.2. (See the attached page A and columns 1-4 of page C.
3. I assume that Mr. Reno could have had earnings consistent with that of a US government police officer employed by the CIA. Per the Gonzalez letter (cited above) this would have been $35,404 at the starting level (GSL-6 step 5) in year-2000 dollar values. (See page B and column 4 of page C.)
4. I have assumed no promotion beyond GSL-6. However, I have assumed step increases as allowed by law. (See page A and columns 5 and 6 of page C.)
5. I have adjusted the 2002-dollar values of earnings to reflect inflation between 2002 and 2005. (See page B.) In addition, I have assumed inflation beyond 2005 as shown at the top part of page D. The inflation-adjusted earnings are in column 7 of page C.
6. I have assumed a loss of Federal retirement income loss that Mr. Reno would have achieved had he been employed for the rest of his working life as a Federal police officer. The retirement calculations are shown on page A and the amounts are shown in column 8 of page C. I assume a normal life expectancy for Mr. Reno to age 77.1 as shown on page A.
7. I have assumed no other fringe benefit loss since Mr. Reno appears to be covered by medical insurance.
8. I have deducted Federal income tax at a rate of 9.2% and state of income tax at a rate of 3.7%, or 40% of the Federal rate. I have also deducted 1.3% of the pay to account for the Federal retirement contribution Mr. Reno would have been obligated to pay. (See page B and column 9 of page C.)
9. The after-tax loss is calculated for each year of the calculation and shown in column 10 of page C. Column 10 is column 7 plus column 8 minus column 9.

EX "D"